**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MICHAEL FUGATE, | : | Case No. 3:11-cv-390 |
| Plaintiff, | | District Judge Walter H. Rice |
| | : | Magistrate Judge Michael J. Newman |
| vs. | | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS CASE BE REMANDED FOR AN IMMEDIATE AWARD OF BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Michael Fugate ("Plaintiff") "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 7), the Commissioner's Memorandum in Opposition (doc. 8), Plaintiff's Reply (doc. 9), the administrative record (doc. 6)[2] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed his initial DIB and SSI applications on December 17, 2007, asserting he has been under a "disability" since November 1, 2007. PageID 212-20. Plaintiff claims he is disabled due to systemic lupus erythematosis[3] ("SLE"). PageID 245.

Following initial administrative denials of his applications, Plaintiff received a hearing before ALJ Peter Silvain on September 8, 2010. PageID 69-135. On September 21, 2010, the ALJ issued a written decision, concluding that Plaintiff was "not disabled." PageID 49-61. Specifically, the ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since November 1, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: 1) lupus; 2) hypertension; 3) adjustment disorder with depressed mood; 4) major depression with psychotic features; 5) anemia; and 6) obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited to work featuring: 1) alternation of sitting or standing positions at 30-minute intervals throughout the workday; 2) no climbing of

---

[3]Systemic lupus erythematosus is a "serious, often fatal, disease accompanied by various lesions (injuries) in the viscera (organs), skin eruptions, fever, and other symptoms." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, Volume 3, L-199 (1995).

     ladders, ropes, or scaffolds; 3) occasional climbing of ramps or stairs; 4) occasional stooping, kneeling, crouching, or crawling; 5) frequent handling (gross manipulation) and fingering (fine manipulation); 6) avoidance of direct exposure to sunlight; 7) simple, routine and repetitive tasks in a work environment free of fast-paced production requirements and involving only simple work-related decisions with few, if any, production requirements and involving only simple work-related decisions with few, if any, workplace changes; 8) occasional interactions with the public and co-workers with no tandem tasks; and 9) only occasional over-the-shoulder supervision. By definition, light work ordinarily requires the capacity to lift 10 pounds frequently and 20 pounds occasionally, and to engage in a good deal of sitting, standing, or walking.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 29, 1973 and was 33 years old, defining him as a younger individual, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at PageID 53-61.

     On September 6, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 42-44; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Thereafter, Plaintiff filed this timely appeal on November 3, 2011.  Doc. 2.

> B.      **Plaintiff's Vocational Profile and Testimony**

Plaintiff was 33 years old on his alleged disability onset date, and thus considered a "younger individual." *See* 20 C.F.R. § 404.1563(c); PageID 209, 218.  Plaintiff has a high school education.  PageID 250. He has past relevant work as a truck driver, mold operator, and forklift driver.  PageID 120.

At the hearing, Plaintiff testified that he suffers from rashes, cold sweats, vomiting, chills, crying spells, suicidal thoughts, dislike of interpersonal interactions, lack of concentration, memory loss, and pain in his arms, legs, and back. PageID 81-82. Plaintiff explained that symptoms of his SLE include constant pain in his joints, sweating, diarrhea, and headaches. PageID 85.  Plaintiff testified that his pains have been increasing in severity over the last eight years. *Id*.   Plaintiff also testified that his medication was somewhat helpful in reducing his pain and controlling his rashes.  PageID 86.

Plaintiff stated he began experiencing depression and anxiety when he was diagnosed with SLE. PageID 87. He explained that this is the reason he is antisocial and wants to avoid people. *Id.* Plaintiff noted that his anxiety makes him feel like his heart is about to come out of his chest and causes him to feel paranoid. *Id.*

Plaintiff estimated that on a bad day, his pain is a 9 out of 10; on a good day, his pain is a 7 or 8 out of 10. PageID 86.  He stated that he feels better in spurts, but will "pay for it" if he overexerts himself. PageID 107. Out of a 30-day period, he estimates that he spends 20 days lying in bed. PageID 101. Regarding daily activities, Plaintiff testified that he cannot dress himself, and he depends on his wife to feed him.  PageID 101-03. Plaintiff stated that a typical day involves spending time in bed or in a recliner, listening to the radio, taking a bath, and

talking to his wife. PageID 90-94. He testified that he currently smokes a pack of cigarettes every two to three days. *Id.*

Plaintiff stated that he knows how to read and write, but is unable to concentrate. PageID 78-79. He testified that because of the pain in his extremities, he can only sit for 15-20 minutes and stand for 10-15 minutes at a time. PageID 88. He estimated that he would be able to walk for two or three minutes at a time, and would be unable to grip a steering wheel or pick up a gallon of milk. PageID 77, 89.

### C. Vocational Expert Testimony

A Vocational Expert ("VE"), Charlotta Ewers, testified at the hearing. The VE testified that, based on Plaintiff's age, education, work experience and RFC, he could not perform his past relevant work. Nevertheless, the VE testified Plaintiff could perform the following jobs at the light exertion level: mail clerk; copy machine operator; office helper; and warehouse checker. PageID 121-122. The VE further testified that Plaintiff could perform the following sedentary jobs: microfilm document preparer; surveillance system monitor; charge account clerk; and weight tester. PageID 123. The VE acknowledged that every job she identified requires a regular, dependable employee, and has an acceptable rate of absenteeism of just one day per month. The VE also acknowledged that the worker would be required to maintain attention and focus to the degree that he or she can achieve the goals assigned by the employer. PageID 132.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence; and (2) whether the ALJ employed the correct legal

criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[4]; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found a claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB and/or SSI benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

---

[4] The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

Plaintiff's medical history has been adequately summarized in the parties' briefs, *see* doc. 7 at PageID 566-75; doc 8 at PageID 585-93, and the Court will not fully repeat it here. Where applicable, the Court will identify the medical evidence relevant to its decision.

In his Statement of Specific Errors, Plaintiff claims the ALJ erred by failing to give appropriate weight to the findings of his treating rheumatologist, C.J. Alappatt, M.D., and his treating psychiatrist, Sehba Siddiqi, M.D. Doc. 7 at PAGEID 575-83. For the reasons that follow, the Court agrees the ALJ erred in his analysis of both doctors' reports.

### A. The ALJ Erred by Rejecting the Opinion of Plaintiff's Treating Rheumatologist

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F. 3d 532, 540 (6th Cir. 2007). Under the "treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source, so long as he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Nevertheless, a treating physician's statement -- that a claimant is disabled -- is not determinative of the ultimate issue. *Landsaw v. Sec'y of H.H.S.*, 803 F.2d 211, 213 (6th Cir. 1986). Moreover, a treating physician's opinion is only to be given controlling weight if it is well-supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Id*. The Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is "inconsistent with other substantial evidence of record." 20 C.F.R. § 404.1527(d)(2).

If the opinion of a treating source is not accorded controlling weight, the ALJ must apply

certain factors -- including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source -- in determining the level of weight to give the opinion. *Wilson*, 378 F. 3d at 544.

Dr. Alappatt, a rheumatologist[5] at the Arthritis and Osteoporosis Center of Southwest Ohio, began seeing Plaintiff in June 2007 after Plaintiff was hospitalized with severe rashes and fever, and diagnosed with SLE. *See* PageID 469. The record contains Dr. Dr. Alappatt's treatment notes through August 2010. PageID 467-80, 511-16, 557-63. Those notes indicate that Plaintiff's impairments routinely cause a myriad of symptoms, including weakness/malaise, fatigue, pain (in his joints, neck, shoulder, leg, back and knee), photophobia, dizziness, temperature intolerance, and chills. *Id.* Dr. Alappatt also opined that Plaintiff cannot perform sedentary work on a sustained basis due to his SLE symptoms and medication regimen. PageID 557-63.

The ALJ rejected Dr. Alappatt's opinion and gave it "little weight," explaining that his opinion was not well-supported or consistent with other evidence in the record. PageID 58. Specifically, the ALJ found Dr. Alappatt's opinion to be "at odds with treatment records that show the claimant's SLE is controlled well when he complies in taking his medication." PageID 57. The record, however, supports the opposite conclusion.

In August 2010, Dr. Alappatt opined that SLE caused Plaintiff "severe muscle and joint pain along with disabling fatigue, *despite* the pharmacotherapies we are giving him." PageID 561 (emphasis added). Dr. Alappatt further opined that because of his impairments, Plaintiff would not be able to participate in a competitive work environment. PageID 557-561. Dr.

---

[5] Patients with lupus are generally treated by rheumatologists. *See, e.g., Blair v. Comm'r of Soc. Sec.*, 430 F.App'x 426 (6th Cir. 2011).

Alappatt's opinions are likewise supported by evidence of Plaintiff's need for assistance with many daily activities. *See* PageID 93; 101-103. A review of Dr. Alappatt's treatment notes spanning more than two years shows that he frequently modified Plaintiff's prescribed medication, and consistently observed fluctuating symptomology. *See generally* PageID 467-80, 511-16. While there was a period during which Plaintiff was unable to take prescribed medication and his symptoms worsened, Plaintiff experienced a "relapse of physical health symptoms" even when his medication regimen resumed. *See* PageID 524.

Instead of relying on the opinion of Dr. Alappatt, the ALJ accorded "great weight" to the opinion of Medical Expert Richard Gardner M.D. *See* PageID 56. Dr. Gardner neither treated Plaintiff nor examined him; his review was limited to an analysis of Plaintiff's medical records. Moreover, Dr. Gardner is a certified internist and pulmonologist, and does not practice in rheumatology like Dr. Alappatt. In fact, Dr. Gardner admitted that he does not even treat patients who have lupus, stating that he "farmed out" those cases from his practice. *See* PageID 52, 116. In addition, Dr. Gardner testified by phone and was unable to observe Plaintiff during the hearing. PageID 108. Nevertheless, Dr. Gardner testified that, in his opinion, Plaintiff's illness was "outside" the scope of the Listings because he had no organ involvement and "didn't see these symptoms documented in the medical record to the disabling condition that would limit his daily activities." PageID 111. The ALJ agreed with the Medical Expert and formulated Plaintiff's RFC based upon Dr. Gardner's testimony. PageID 56-57.

In rejecting Dr. Alappatt's opinion, however, the ALJ gave no consideration to any of the factors required by Social Security regulations -- including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a

whole; and the specialization of the treating source -- in determining the level of weight to give the opinion. 20 C.F.R. § 404.1527; *Wilson*, 378 F. 3d at 544. Likewise, opinions of one-time examining physicians, record-reviewing physicians, and Medical Experts who testify during administrative hearings must also be weighed under these same factors, including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(d)-(f); *see also* Social Security Ruling 96-6p. However, the ALJ failed to conduct such an analysis.

Dr. Alappatt's opinion is based on objective laboratory findings, clinical examination findings, and a history of direct treatment of Plaintiff over a number of years. Moreover, his opinion is well-supported by substantial evidence of record -- including other medical source findings -- and is consistent with Plaintiff's testimony regarding his inability to perform a wide range of daily living activities. As such, the ALJ violated the treating physician rule by failing to accord great weight, if not controlling weight to Dr. Alappatt's conclusion regarding the severity of Plaintiff's impairments. *Wilson*, 378 F. 3d at 544. On this basis alone, the ALJ's decision merits reversal. *Id*.

Therefore, based upon the foregoing, the Court finds the ALJ's opinion to be unsupported by substantial evidence, and Plaintiff's first assignment of error to be well-taken.

### B. The ALJ Improperly Weighed the Opinion of Plaintiff's Treating Psychiatrist, and Failed to Consider the Combined Impact of his Mental and Physical Impairments

The ALJ also merits reversal on additional, independent grounds: the ALJ improperly analyzed Dr. Siddiqi's findings and failed to consider the combined impact of Plaintiff's mental and physical impairments. Dr. Siddiqi began seeing Plaintiff in July 2008 for psychiatric treatment after referral from Day-Mont Behavioral Health Care. *See* PageID 457. In an October 2009 questionnaire, Dr. Siddiqi found Plaintiff unemployable, and opined that he was unable to

perform adequately in a competitive work environment. PageID 517-19.  Specifically, she found Plaintiff to have a markedly-impaired ability to: maintain regular attendance; sustain ordinary work routine without special supervision; complete a normal workday or workweek without interruptions from psychological symptoms; get along with others without distracting them or exhibiting behavioral extremes; and respond appropriately to changes at work.  PageID 517.  She diagnosed Plaintiff with major depression, and assigned to Plaintiff a GAF score of 50.[3] PageID 450.  Nevertheless, the ALJ gave Dr. Siddiqi's opinion "little weight" because it did "not correspond to DayMont progress notes that generally show the claimant's depressive symptoms and activity level improve when he complies with therapy." PageID 58.  The ALJ additionally stated "Dr. Siddiqi's functional assessment fares poorly in that it is not well supported clinically and is inconsistent with other evidence."  *Id.*  Instead, the ALJ favored the opinion of Mark D. Hammerly, Ph.D., a consultative examiner who saw Plaintiff on May 1, 2008.  *See* PageID 411-21.  Dr. Hammerly noted that Plaintiff's mood was "downcast," he displayed mild psychomotor retardation, and "appeared fatigued at times."  PageID 415.  Dr. Hammerly diagnosed Plaintiff with adjustment disorder with depressed mood, and assigned a GAF score of 61 --  indicative of mild limitations.[4] PageID 418.

      The ALJ erred in his handling of Dr. Siddiqi's opinion in multiple respects.  Similar to Dr. Alappatt's opinion, the ALJ gave no consideration to any of the factors required by Social Security regulations -- including the length of the treatment relationship and the frequency of

---

[3] A Global Assessment of Functioning ("GAF") score of 50 (41-50, inclusively) indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.* no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) ("DSM-IV").

[4] A GAF score of 61 (61-70, inclusively) indicates mild symptoms or limited difficulty in social, occupational, or school function.  DSM-IV at 34.

examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source -- in determining the level of weight to give Dr. Siddiqi's opinion. 20 C.F.R. § 404.1527; *Wilson*, 378 F. 3d at 544.

Furthermore, there is no evidence that the ALJ considered Plaintiff's impairments in combination when assessing Plaintiff's RFC. The Social Security Act requires that all impairments, regardless of their severity, be considered in combination. 42 U.S.C. § 423(d)(2)(B); *see also* 20 C.F.R. § 404.1523. The Sixth Circuit has held that an ALJ's statement that the combined effects of the impairments were considered is insufficient and merits reversal when "there was, in reality, no combined treatment in the ALJ's subjective symptom analysis or elsewhere." *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1989).

The ALJ's failure to consider Plaintiff's mental and physical impairments in combination is especially important in this case, given that there is substantial evidence in the record which indicates that Plaintiff's physical and psychological symptoms are interwoven. For instance, during most of his appointment with Dr. Alappatt, Plaintiff admitted to depression, anxiety, and difficulty sleeping. *See, e.g.,* PageID 469, 472, 475, 478, 514. In September 2009, Plaintiff told Dr. Siddiqi that depression aggravated his pain and joint aches. PageID 527. Furthermore, in October 2009, Dr. Siddiqi, noted Plaintiff's depression "was aggravated by lupus." PageID 518. Moreover, Plaintiff's testified at the hearing that he began experiencing depression and anxiety when he was diagnosed with SLE. *See* PageID 87. In light of this evidence of record, it was reversible error for the ALJ not to consider the combined effects of Plaintiff's physical and mental impairments. *Blankenship*, 874 F.2d at 1123-24.

Based upon the foregoing, the ALJ's findings with regard to Dr. Siddiqi's opinion are not substantially supported. Plaintiff's second assignment of error is also well-taken, and reversal of the ALJ's decision is justified on this basis alone.

### C. An Immediate Award of Benefits is Warranted

Having found that the ALJ's non-disability determination is unsupported by substantial evidence, the Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir 1994); *Lowery v. Comm'r of Soc. Sec.*, No. 3:10-cv-427, 2011 U.S. Dist. LEXIS 154323, at *31-32 (S.D. Ohio Dec. 8, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 40333 (S.D. Ohio Mar. 23, 2012) (Rice, J.); *Valentine v. Astrue*, No. 3:10-cv-470, 2011 U.S. Dist. LEXIS 154178, at *29-30 (S.D. Ohio Dec. 7, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 36736 (S.D. Ohio Mar. 19, 2012) (Rice, J.).

Such is the case here. The proof of disability -- including the opinion of Plaintiff's treating rheumatologist, and the combined effects of his mental and physical impairments -- is great, and remand will serve no purpose other than delay. Therefore, all substantial factual issues have been resolved and the record reflects that Plaintiff is disabled, and has been since his alleged onset date of November 1, 2007.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be meritorious.

### IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE,** and **REVERSED**;

2. This case be **REMANDED FOR AN IMMEDIATE AWARD OF BENEFITS, CONSISTENT WITH THE SOCIAL SECURITY ACT, WITH AN ONSET DATE OF NOVEMBER 1, 2007**; and

3. This case be **CLOSED** on the docket of this Court.

November 15, 2012                             **s/Michael J. Newman**
                                              United States Magistrate Judge


### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).